UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Kathleen Barbara Mayer,

        Plaintiff,

vs.

Countrywide Home Loans
a/k/a MERS, Inc.,

        Defendant.        Civ. No. 08-1071 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §§636(b)(1)(B), upon the Plaintiff's self-styled Motion for a Preliminary Injunction. A Hearing on the Motion was conducted on May 12, 2008, at which time, the Plaintiff Kathleen Barbara Mayer ("Mayer") appeared pro se, and the Defendant Countrywide Home Loans a/k/a MERS, Inc. ("Countrywide") appeared by Brent R. Lindahl, Esq. Following the Hearing, Mayer filed both a Motion for Default

Judgment, and an Amended Motion for Default Judgment, to which Countrywide filed

a response.

For reasons which follow, we recommend that Mayer's Motions for Default

Judgment be denied, and that her Motion for a Preliminary Injunction be denied.

## II.  Factual and Procedural Background

On November 20, 2006, Mayer granted a mortgage to MERS, Inc., on her real

property, which is located at 25224 County Road 24, in Glenwood, Minnesota (the

"Homestead"), in the amount of $156,000.00.  See, Defendant's First Memorandum

in Opposition, Docket No. 9, at 1; Affidavit of Molly M. Borg ("Borg Aff."), Docket

No. 10, Exhibit 1.  On November 29, 2006, Countrywide became the loan servicer on

the mortgage.  See, Borg Aff., supra, Exhibit 3.  Mayer soon defaulted on the loan,

and Countrywide commenced foreclosure proceedings. Id., Exhibit 4. Ultimately, on

October 16, 2007, the Homestead was sold at a Sheriff's foreclosure sale.  Id., Exhibit

5.

The redemption period for the foreclosure expired on April 16, 2008.  See,

Complaint, Docket No. 1, at ¶12; Answer, Docket No. 19, at ¶14.  On that date, Mayer

filed both her Complaint, and her present Motion for a Preliminary Injunction.  See,

Complaint, supra; Plaintiff's Motion for a Preliminary Injunction, Docket No. 3.  In

her Complaint, Mayer alleges that Countrywide improperly foreclosed the mortgage on her residence, without providing her notice of her right to mediation, pursuant to the Minnesota Farmer Lender Mediation Act ("FLMA"), Minnesota Statutes Sections 583.20 et seq. Id. at ¶¶7-10. In support of that claim, Mayer contends that her Homestead is part of a 62-acre farm (the "Farm"), and therefore, that it qualifies for protection under the FLMA. Id. at ¶8; see also, Affidavit of Mary Gwendolyn Mayer ("M. Mayer Aff."), Docket No. 7, at ¶4; Affidavit of Jeffrey Allan Rosten ("Rosten Aff."), Docket No. 7, at ¶4. In her Complaint, Mayer asks the Court to void the foreclosure sale, and to enjoin Countrywide from conducting any future foreclosure proceedings. Id. at p. 4.

As noted, Mayer has filed a Motion for Preliminary Injunction, which states that she seeks to "stop" Countrywide's foreclosure proceedings. See, Plaintiff's Motion for Preliminary Injunction, supra. However, at the Hearing, Mayer represented that she seeks injunctive relief only to maintain the status quo, should the Court ultimately determine that she is entitled to mediation under the FLMA. See also, Plaintiff's Second Memorandum in Support, Docket No. 28, at 5 ("The issuance of [sic] injunction or TRO until such time as the [FLMA] is fully complied with does not deprive Defendant of exercising proper legal action thereafter.").

- 3 -

For its part, Countrywide contends that the FLMA is inapplicable, because the Homestead, which was mortgaged, is only 6.21 acres, and because Mayer concedes that the Farm consistently grosses less than $20,000.00 per year.  See, <u>Defendant's First Memorandum in Opposition</u>, supra at 6; <u>Borg Aff.</u>, supra, Exhibit 2; <u>Affidavit of Kathleen Barbara Mayer ("K. Mayer Aff.")</u>, <u>Docket No. 7</u>, at ¶5.  Accordingly, Countrywide argues that Mayer cannot show a likelihood of success on the merits, so as to support her request for injunctive relief because, it contends, her Homestead does not qualify for protection under the FLMA.  <u>Id.</u>, citing <u>Minnesota Statutes Section 583.24</u>, <u>Subdivision 2(b)</u>.  At the Hearing, Mayer countered Countrywide's argument by asserting that the FLMA applies to any family farmer who owns at least 60 acres of agricultural property, regardless of how many -- or how few -- acres are mortgaged.

At the Hearing, Mayer expressed her concern that counsel for Countrywide had filed a memorandum in opposition to her Motion, without first filing a formal Notice of Appearance.  Accordingly, we directed counsel for Countrywide to file a Notice of Appearance, in order to alleviate Mayer's concerns.  On May 14, 2008, counsel for Countrywide noticed their appearance, see, <u>Docket No. 17</u>, and on the same date, Countrywide filed its Answer.  See, <u>Answer</u>, <u>Docket No. 18</u>.  In its Answer,

- 4 -

Countrywide denied any wrongdoing, and alleged that Mayer did not have a viable claim, under the FLMA. <u>Id.</u> Countrywide also asserted several affirmative defenses, including, amongst them, waiver, estoppel, laches, and the statute of limitations. <u>Id.</u>

On the same date, Mayer filed a Motion for Default Judgment, in which, again, she alleges that counsel for Countrywide failed to notice their appearance in a timely manner.[1] See, <u>Plaintiff's Motion for Default Judgment, Docket No. 21</u>. Accordingly, Mayer asserts that Countrywide had failed to make any appearance in this matter, and therefore, that she is entitled to a Default Judgment. <u>Id.</u> On May 19, 2008, Mayer filed an Amended Motion for Default Judgment, in which she contends that Countrywide's Answer, and its memoranda in opposition to her Motion for a Preliminary Injunction, must be disregarded by this Court. See, <u>Plaintiff's Amended Motion for Default Judgment, Docket No. 27</u>. As related by Mayer, counsel for Countrywide should have noticed their appearance prior to filing a memorandum on May 5, 2008, or alternatively, immediately after we conducted our Hearing on May

---

[1]Mayer had not previously sought an entry of default from the Clerk of Court. See, <u>Rule 55(a), Federal Rules of Civil Procedure</u>; see also, <u>Johnson v. Dayton Electric Manufacturing Co.</u>, 140 F.3d 781, 783 (8th Cir. 1998)("When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b).").

12, 2008.  <u>Id.</u> at ¶¶3, 6.  As a result, she argues that she is entitled to a Default

Judgment, notwithstanding Countrywide's Answer.  <u>Id.</u> at p. 3.

We address the parties' arguments in turn.

### III.  <u>Discussion</u>

A.     <u>The Plaintiff's Motions for Default Judgment</u>.

1.     <u>Standard of Review</u>.  According to Rule 55(a), Federal Rules of

Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is

sought has failed to plead or otherwise defend as provided by these rules, and the fact

is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

A Judgment of default may, thereafter, be entered on application to the Court.  See,

<u>Johnson v. Dayton Electric Manufacturing Co.</u>, 140 F.3d 781, 783 (8th Cir. 1998)

("When a party 'has failed to plead or otherwise defend' against a pleading listed in

Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment

under Rule 55(b)."); <u>United States v. Woods</u>, 2004 WL 790332 at *3 (D. Minn.,

March 31, 2004)("Rule 55(b)(2) commits the entry of a default judgment to the

discretion of the district court."), citing <u>FTC v. Packers Brand Meats, Inc.</u>, 562 F.2d

9, 10 (8th Cir. 1977); see also, <u>Harris v. St. Louis Police Dept.</u>, 164 F.3d 1085, 1086

(8th Cir. 1998).

When determining whether a Default Judgment is appropriate, the Court must consider whether the assertedly defaulting party has filed a responsive Answer, or other responsive pleading, prior to an entry of Default Judgment. See, Johnson v. Allied Interstate Inc., 2002 WL 1906024 at *2 (D. Minn., August 19, 2002) ("Although the entry of a default against Allied would have been warranted as of the date Johnson brought her motion for default judgment, no default was entered on the docket pursuant to Rule 55(a), and the Court cannot ignore the fact that an Answer has now been filed and Allied is prepared to defend the lawsuit on the merits.").

A Court may enlarge the time for the filing of a document when the failure to act was the result of excusable neglect. See, Rule 6(b)(2), Federal Rules of Civil Procedure. Our Court of Appeals has also recognized that a failure to file an Answer, or other required pleading, can be excused under certain circumstances, including "excusable neglect," when faced with the potential of a Default Judgment. See, Johnson v. Dayton Electric Manufacturing Co., supra at 784. Notably, Rule 55(c) allows the Court to set aside an entry of default "for good cause shown," or "in accordance with Rule 60(b)," which, in turn, provides that a Judgment may be set aside upon a showing of "mistake, inadvertence, surprise, or excusable neglect." "[W]hether conduct is excusable is an equitable determination that 'tak[es] account

of all relevant circumstances surrounding the party's omission.'" <u>Johnson v. Dayton Electric Manufacturing Co.</u>, supra at 784, citing <u>Pioneer Investment Services v. Brunswick Associates Limited Partnership</u>, 507 U.S. 380, 395 (1993).

Guided by <u>Johnson v. Dayton Electric Manufacturing Co.</u>, supra, the following factors are of principal importance:  1) "the blameworthiness of the defaulting party;" 2) whether the defaulting party has presented a meritorious defense; and 3) prejudice to the non-defaulting party. <u>Id.</u> at 784-785.  "[P]rejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." <u>Id.</u> at 785.  Instead, the asserted prejudice must be "concrete," such as the "loss of evidence, increased difficulty in discovery, or greater opportunities for fraud and collusion." <u>Id.</u>, quoting <u>Berthelson v. Kane</u>, 907 F.2d 617, 621 (6th Cir. 1990). Such considerations reflect the "judicial  preference for adjudication on the merits." <u>Id.</u> at 784, citing <u>Oberstar v. F.D.I.C.</u>, 987 F.2d 494, 504 (8th Cir. 1993).

2. <u>Legal Analysis</u>.  Here, Mayer contends that she is entitled to Default Judgment solely because counsel for Countrywide did not notice their appearance in this action until May 14, 2008 -- nine (9) days after Countrywide filed a memorandum in opposition to her Motion for a Preliminary Injunction, and two (2) days after we conducted a Hearing on that Motion.  See, <u>Plaintiff's Motion for Default</u>

Judgment, supra; Plaintiff's Amended Motion for Default Judgment, supra. Not surprisingly, she cites no support for this argument, and we conclude that her Motion is wholly without merit.

On April 18, 2008, after receiving Mayer's Complaint, and granting her application to proceed in forma pauperis, see, Docket No. 5, we directed the United States Marshal to effect service on Countrywide forthwith, in order to expedite a Hearing on Mayer's Motion for a Preliminary Injunction. See, Order, Docket No. 6. On May 22, 2008, an Affidavit of Service was filed, which disclosed that Countrywide was served with the Summons and Complaint on April 24, 2008. See, Docket No. 30. Accordingly, Countrywide's Answer was due by no later than May 14, 2008, see, Rule 12(a)(1)(A), Federal Rules of Civil Procedure, and its Answer was timely filed on that date. See, Answer, supra.

As a result, Mayer cannot make any showing that Countrywide acted in bad faith, or delayed this proceeding in any way, given that its Answer was timely filed. Compare, Forsyth v. Hales, 255 F.3d 487, 490 (8th Cir. 2001)(while "[d]efault judgment is appropriate where the party against whom the judgment is sought has engaged in willful violations of court rules, contumacious conduct, or intentional

delays * * * [it] is not an appropriate sanction for a marginal failure to comply with time requirements.").

Moreover, Mayer cannot identify any prejudice, as contemplated by the Johnson Court, given Countrywide's compliance with the Rules.  Compare, Johnson v. Allied Interstate, Inc., supra at *2 (responsive pleading, that was filed sixty-four (64) days after deadline, did not warrant a Default Judgment in the absence of concrete prejudice).  Indeed, it appears that, upon service of the Summons and Complaint, Countrywide first filed a memorandum in opposition to Mayer's Motion for a Preliminary Injunction, on May 5, 2008, in order to comply with the expedited briefing schedule which we had implemented, before filing a timely Answer on May 14, 2008.  In addition, as Countrywide observes, on May 6, 2008, Mayer filed a memorandum in support of her Motion, which purported to respond to Countrywide's arguments.  See, Plaintiff's First Memorandum in Support, Docket No. 13, at 1. Therefore, Mayer has not shown that the allegedly untimely Notice of Appearance has impacted upon her ability to prosecute this action.

Lastly, given that Countrywide has filed an Answer, and asserted affirmative defenses, we find that its intention to contest Mayer's claims on the merits weighs in favor of denying a Default Judgment.  See, American States Insurance Corporation

- 10 -

v. Technical Surfacing, Inc., 178 F.R.D. 518, 521 (D. Minn. 1998)("Accordingly,

'"[w]hen a defendant appears and indicates a desire to contest an action, a court may

exercise its discretion to refuse to enter default, in accordance with the policy of

allowing cases to be tried on their merits.'"), citing Wendt v. Pratt, 154 F.R.D. 229,

230 (D. Minn. 1994), quoting Lee v. Brotherhood of Maintenance of Way Employees,

139 F.R.D. 376, 381 (D. Minn. 1991), citing, in turn, 10 Wright, Miller & Kane,

Federal Practice and Procedure: Civil 2d, §2593, at p. 411.  For these purposes, we do

not decide if the defenses are applicable, let alone controlling, but we simply

recognize that the meritorious defense factor requires that "the proffered evidence

'would permit a finding for the defaulting party,' not whether it is undisputed."

Johnson v. Dayton Electric Manufacturing Co., supra at 785, quoting Augusta

Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir.

1988).

In sum, even if Countrywide's Answer had been technically untimely, the

pertinent factors all weigh in favor of allowing this action to proceed on its merits, and

Mayer has not advanced any cognizable basis for granting her a Default Judgment.

Moreover, Mayer did not seek an entry of default from the Clerk of Court, prior to

filing her Motions for Default Judgment, as contemplated by Rule 55(a), Federal

Rules of Civil Procedure.   Cf., <u>Johnson v. Allied Interstate Inc.</u>, supra at *2 ("Although the entry of a default against Allied would have been warranted as of the date Johnson brought her motion for default judgment, no default was entered on the docket pursuant to Rule 55(a), and the Court cannot ignore the fact that an Answer has now been filed and Allied is prepared to defend the lawsuit on the merits.").  As a consequence, we find no basis, here, for rejecting Countrywide's properly filed Answer, or for granting a Default Judgment to Mayer.

We acknowledge that, at the Hearing, Mayer complained that counsel for Countrywide had not yet noticed their appearance, despite filing a memorandum in opposition on behalf of their client, and she has renewed that argument in her Motions for Default Judgment.  Indeed, her complaint about the allegedly untimely Notice of Appearance appears to be her only basis for requesting a Default Judgment.  At the Hearing, we directed counsel for Countrywide to file a Notice of Appearance, in order to alleviate Mayer's concerns, and two (2) days later, counsel for Countrywide complied with that directive.  Accordingly, we reject any contention, by Mayer, that Countrywide failed to comply with our directive, and we expressly disavow her representation that we directed that the Notice be **immediately** filed.

We find nothing in this Record to so much as suggest that Mayer suffered any prejudice from the timing of the Notice of Appearance, nor has our independent research revealed any support for her contention that any alleged delay would counsel us to reject, wholesale, any filings made on behalf of Countrywide, by its counsel. Accordingly, we recommend that Mayer's Motions for Default Judgment be denied, and that this action be permitted to proceed on its merits.

   B. <u>The Plaintiff's Motion for a Preliminary Injunction</u>.

     1. <u>Standard of Review</u>.  An Injunction is issued when "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  <u>Education Minnesota Lakeville v. Indep. Sch. Dist. No. 194</u>, 341 F. Supp.2d 1071, 1073 (D. Minn. 2004), citing <u>Dataphase Sys., Inc. v. CL Sys., Inc.</u>, 640 F.2d 109, 113 (8th Cir. 1991).  In deciding a Motion for injunctive relief, a Court must weigh:  1) the threat of irreparable harm to the moving party; 2) the movant's likelihood of success on the merits; 3) the balance between the harm to the movant if the injunction is denied, and the harm to other parties if the injunction is granted; and 4) the public interest.  See, <u>Bandag, Inc. v. Jack's Tire & Oil, Inc.</u>, 190 F.3d 924, 926 (8th Cir. 1999); <u>Hubbard Feeds, Inc. v.</u>

Animal Feed Supplement, Inc., 182 F.3d 598, 601 (8th Cir. 1999); Dataphase Sys., Inc. v. CL Sys., Inc., supra at 113.

"These factors are not a rigid formula." Bandag, Inc. v. Jack's Tire & Oil, Inc., supra at 926. Rather, when applying these factors, "'a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene.'" Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., supra at 601, quoting United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998), quoting, in turn, Dataphase Sys. v. CL Sys., Inc., supra at 113; see also, General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624 (8th Cir. 1987)("[C]are must be exercised in balancing the equities, especially since a preliminary injunction motion is too early a stage of the proceedings to woodenly assess a movant's probability of success on the merits with mathematical precision.").

When seeking a Preliminary Injunction, the burden on the movant "'is a heavy one where * * * granting the preliminary injunction will give [the movant] substantially the relief [he] would obtain after a trial on the merits.'" Sanborn Mfg. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 486 (8th Cir. 1993), quoting Dakota Indus., Inc. v. Ever Best Ltd., 944 F.2d 438, 440 (8th Cir. 1993); see also, Education Minnesota Lakeville v. Indep. Sch. Dist. No. 194, supra at 1073 ("[T]he

party seeking injunctive relief bears the burden of proving all the Dataphase factors."). In addition, "an injunction cannot issue if there is no chance of success on the merits * * *." Mid-America Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005), citing Firefighters Local Union No. 1784 v. Stotts, 457 U.S. 561, 589 (1984)(O'Connor, J., concurring), and AM General Corp. v. DaimlerChryler Corp., 311 F.3d 796, 804 (7th Cir. 2002).

Accordingly, we are obligated to closely examine each of the requisite factors, in order to determine if this is one of those instances in which the "extraordinary remedy" of an injunction is warranted. See, Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003), citing Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987). Of course, if preliminary injunctive relief is warranted, the grant of the Motion "does not bind the District Court or the parties in any further proceedings in [the] case, for adjudication of a motion for a preliminary injunction is not a decision on the merits of the underlying case." Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., supra at 603.

2.  Analysis.  We proceed to analyze the prerequisites for injunctive relief.

a.   The Likelihood of Success on the Merits.  As noted, the crux of the parties' dispute is whether Mayer's Homestead qualifies for protection under the FLMA, such that she should have been entitled to a mediation notice, prior to the commencement of foreclosure proceedings.[2]

The purpose of the FLMA, as recognized by Minnesota Courts, is "to halt the process [of foreclosure] before agricultural property changes hands and to maintain the parties in their present respective positions until they have had an opportunity to adjust the indebtedness by mediation."  Production Credit Ass'n of Worthington v. Spring Water Dairy Farm, Inc., 407 N.W.2d 88, 91 (Minn. 1987).  In enacting the FLMA, the Minnesota State Legislature made the following findings:

_____

[2]There are very few cases which address the FLMA in any respect, and accordingly, we provided copies of three (3) cases to the parties, at the time of the Hearing -- namely, Plummer State Bank v. Hughes, 1991 WL 245320 (Minn. App., November 26, 1991); Rengstorf v. Richards, 417 N.W.2d 138 (Minn. App. 1987), rev. denied (Minn., February 24, 1988); and Northern State Bank v. Efteland, 409 N.W.2d 541 (Minn. App. 1987).  We further granted leave for post-Hearing memoranda on the issue of whether the FLMA applied to Mayer's encumbered property of 6.21 acres, given her contention that, nonetheless, she owns a total of 62 acres of agricultural property.  Notwithstanding our discussion of those cases, at the Hearing, Countrywide submitted a post-Hearing memorandum in which it failed to mention any of those cases, or the relevant statutory provision -- Minnesota Statutes Section 583.24, Subdivision 2(b).  See, Defendant's Second Memorandum in Opposition, Docket No. 24.  Despite Countrywide's decision to forgo any further argument on that issue, we have conducted independent research on the question in order to reach an informed resolution of the Motion before us.

> The legislature finds that the agricultural sector of the state's economy is under severe financial stress due to low farm commodity prices, continuing high interest rates, and reduced net farm income. The suffering agricultural economy adversely affects economic conditions for all other businesses in rural communities as well. Thousands of this state's farmers are unable to meet current payments of interest and principal payable on mortgages and other loan and land contracts **and are threatened with the loss of their farmland, equipment, crops, and livestock** through mortgage and lien foreclosures, cancellation of contracts for deed, and other collection actions. The agricultural economic emergency requires an orderly process with state assistance to adjust agricultural indebtedness to prevent civil unrest and to preserve the general welfare and fiscal integrity of the state.

Minnesota Statutes Section 583.21 [emphasis added].

Accordingly, the FLMA "requires a creditor who wishes to start any one of several kinds of proceedings to enforce a debt against agricultural property to serve a mediation notice on the debtor and on the director of the agricultural extension service or his nominee." Id. at 90, citing Minnesota Statutes Section 583.26, Subdivision 1; see also, Federal Land Bank of Saint Paul v. Wessels, 1989 WL 38400 at *1 (Minn. App., April 25, 1989)("To achieve [its] purpose, the [FLMA] sets out procedures for a debtor to obtain mediation."), rev. denied (Minn., June 21, 1989). Thereafter, "[t]he creditor may not begin the proceeding until the parties have completed mediation, except as otherwise provided in the Act." Id.

However, "[i]f a debtor has not received a mediation notice and is subject to a proceeding of a creditor enforcing a debt against agricultural property * * * the debtor may file a mediation request with the director." Minnesota Statutes Section 583.26, Subdivision 2(c). "Since service of a mediation notice is prerequisite to the commencement of a proceeding to enforce a debt, a debtor served with a summons and complaint but not with a mediation notice could obtain a dismissal of the action without specific statutory provision for dismissal." Production Credit Ass'n of Worthington v. Spring Water Dairy Farm, Inc., supra at 91. Other than the remedy of dismissal, as identified by the Minnesota Supreme Court, the FLMA "does not impose a penalty when a creditor fails to serve a mediation notice." Obermoller v. Federal Land Bank of St. Paul, 409 N.W.2d 229, 232 (Minn. App. 1987), rev. denied (Minn., September 18, 1987).

Countrywide first argues that the FLMA is inapplicable because Countrywide is not a "creditor" within the meaning of the statute. See, Defendant's First Memorandum in Opposition, supra at 5. The statute defines a "creditor" as "the holder of a mortgage on agricultural property, a vendor of a contract for deed of agricultural property, a person with a lien or security interest in agricultural property, or a judgment creditor with a judgment against a debtor with agricultural property."

- 18 -

Minnesota Statutes Section 583.22, Subdivision 4.   In turn, the FLMA defines

"agricultural property" as real property that is principally used for raising poultry, or

for the production of agricultural products, livestock or livestock products, milk or

milk products, or fruit or other horticultural products.   See, Minnesota Statutes

Section 583.22, Subdivision 2, incorporating Minnesota Statutes Section 500.24,

Subdivision 2(a).

Countrywide contends that it cannot be considered a "creditor," under the

FLMA, since a foreclosure sale has already occurred.   See, Defendant's First

Memorandum in Opposition, supra at 5.   In support of that argument, Countrywide

cites to Carnel v. Travelers Ins. Co., 402 N.W.2d 190, 193 (Minn.App. 1987), in

which the Minnesota Court of Appeals observed that the FLMA "primarily is

concerned with mediating difficulties in **existing** creditor-debtor circumstances and

forestalling collection proceedings."   [Emphasis added].   Accordingly, the Carnel

Court concluded that the FLMA "does not apply to redemption periods" because,

"[a]fter a foreclosure sale, there is no creditor-debtor relationship and there is no

existing debt to restructure."   Id.

Although the language of Carnel appears to support Countrywide's position,

we conclude that the facts, there, are not analogous to the circumstances here, given

that, in <u>Carnel</u>, the foreclosure sale had occurred prior to the enactment of the FLMA.

Here, however, we are not faced with the issue of whether to apply the FLMA

retroactively.  Moreover, the <u>Carnel</u> Court restricted the reach of its own decision with

the following language:

> [W]e are mindful that "unless clearly and manifestly so intended by the legislature," laws should not be applied retroactively.  Minn. Stat. §645.21 (1986).  Therefore, on the specific facts of this case in which the foreclosure sale was concluded before the enactment of the mediation legislation, we hold that the district court erred by concluding the Farmer-Lender Mediation Act tolled the statutory redemption period * * * .

<u>Id.</u> at 194.

In view of that specific language, the <u>Carnel</u> decision provides tenuous support for

Countrywide's position, since it limited its holding to foreclosures which were in-

process at the time when the FLMA was enacted.

Accordingly, based upon the plain text of the statute, we conclude that, if

Mayer's Homestead is "agricultural property," and therefore, is otherwise qualified

for protection under the FLMA, then Countrywide is a "creditor" within the meaning

of the statute.  We turn, then, to consider whether Mayer's Homestead is, in fact,

agricultural property, and to determine whether Mayer is a "debtor" within the

meaning of the statute.

In support of her claim, Mayer has submitted numerous Exhibits, in an effort to show that her real property is classified as a "farm" by the Pope County Auditor, to show that she owns property which has been used to grow crops in recent years, and to show that she is named as the operator of a farm with the Farm Service Agency of the United States Department of Agriculture ("USDA"), for the year 2008. See, Exhibit Z, Docket No. 8, at unnumbered pages 1, 12-17, 19-20, and 24-32. Some of the records suggest that Mayer has leased portions of her property for farming. Id. at unnumbered pages 27-30. In addition, the property tax records, which have been submitted by Mayer, reveal that the real property, which Mayer purports to own, is comprised of three (3) parcels: 1) Parcel No. 08-0028-000, with 24.8 acres; 2) Parcel No. 08-0028-001, with 7.0 acres -- i.e., the Homestead; and 3) Parcel No. 08-0012-002, with 29.64 acres. Id. at unnumbered pages 12-17, 19-20. In total, the parcels comprise 61.44 acres.

Notwithstanding Mayer's attempt to demonstrate that her property is "agricultural property," Countrywide argues that Mayer does not qualify as a "debtor" under the FLMA. We agree. The statute defines a "debtor" as 1) "a person operating a family farm as defined in section 500.24, subdivision 2," 2) "a family farm corporation as defined in section 500.24, subdivision 2," or 3) "an authorized farm

corporation as defined in section 500.24, subdivision 2." Minnesota Statutes Section 583.24, Subdivision 2(a). Here, there is no allegation, nor any evidence, which would support a conclusion that Mayer operates a farm corporation. Accordingly, the question devolves to whether Mayer qualifies as a "person operating a family farm."

Section 500.24, Subdivision 2(b), defines a "family farm" as "an unincorporated farming unit owned by one or more persons residing on the farm **or** actively engaging in farming." [Emphasis added]. Here, Mayer has not made a credible showing that she herself is "actively engaged in farming," given the evidence that she has, instead, leased her property to others for farming. See, Resolution Trust Corp. v. Lipton, 983 F.2d 901, 904 (8th Cir. 1993)(concluding that debtors did not qualify as a "family farm," because they "do not go out on the tractors and farm the property nor have they hired people to farm the property;" instead, they "ha[ve] cash rented the land" to a farmer/renter); Bornhorst v. Budzik, 1990 WL 119348 at *1 (Minn. App., August 21, 1990)(affirming the Trial Court's conclusion, that debtors were not "actively engaged in farming," where "[t]hey functioned as investors, nor farmers," and "had a passive role in the actual running of the farm," by leasing the land out); Northern State Bank v. Efteland, 409 N.W.2d 541, 543 (Minn.App. 1987) (noting Trial Court's conclusion, that debtors were outside the scope of the FLMA,

given that they "have not been engaged in any farm activities for three years"). Nevertheless, Mayer has plainly attested that she resides on the Homestead, and that the Homestead is part of the 62-acre Farm, in an attempt to fall within the definition of a family farm.  See, <u>K. Mayer Aff.</u>, supra at ¶1.

However, the statute contains an important exclusion:  "The Farmer-Lender Mediation Act does not apply to a debtor who owns and leases less than 60 acres if the debtor has less than $20,000 in gross sales of agricultural products the preceding year."  <u>Minnesota Statutes Section 583.24</u>, <u>Subdivision 2(b)</u>.  In her Affidavit, Mayer acknowledges that the Farm has "consistently grossed less than $20,000.00 in any given year."  <u>K. Mayer Aff.</u>, supra at ¶5.  The Minnesota Court of Appeals has concluded that, "in order to be protected by the act, a farmer must have $20,000 in gross sales **and** at least 60 acres."  <u>Rengstorf v. Richards</u>, 417 N.W.2d 138, 140 (Minn. App. 1987)[emphasis in original], citing <u>Northern State Bank v. Efteland</u>, supra at 543 ("[E]ven if appellants did meet the $20,000 in gross sales part of the test, subdivision 2(b) requires, **in addition,** that the debtor own at least 60 acres," and "Appellants' farm is only 26 acres, thus excluding them from protection under the Act.")[emphasis added].

We express considerable doubt that the conclusion of the <u>Rengstorf</u> Court comports with the plain text of the statute which, specifically, provides that a farmer must have $20,000.00 in gross sales **if** the farm is fewer than 60 acres. However, if we were to defer to the analysis, and holding, of the Minnesota Court of Appeals, in both <u>Efteland</u> and <u>Rengstorf</u>, then Mayer would not be entitled to protection under the FLMA, given that she fails to satisfy the $20,000.00 threshold. Such a finding would compel the conclusion that Mayer has not shown a likelihood of success on the merits, and would further compel us to recommend that her Motion for a Preliminary Injunction be denied.

However, we need not rely on the analysis in <u>Efteland</u> and <u>Rengstorf</u>, because we conclude that Mayer does not qualify for protection under the FLMA for another reason: Mayer fails to satisfy the 60-acre minimum of the FLMA, given her concession that the mortgage at issue applied only to her 6.21 acre Homestead. See also, <u>Borg Aff.</u>, supra, Exhibit 1 (Mortgage), Exhibit 2 (2008 Property Tax Statement for Parcel No. 08-0028-001).

Mayer has submitted several Exhibits in support of her contention, that we should consider the Farm to be a single, 62-acre property, rather than focusing upon

the 6.21 acre Homestead.[3]  In addition, Mayer has submitted an Affidavit from Jeffrey

_____

[3]As noted, Mayer has submitted several Exhibits, which suggest that she claims ownership of all three (3) parcels.  See, <u>Exhibit Z</u>, supra, at unnumbered pages 1 (USDA record listing Mayer as owner and operator), 27–29 (Lease listing Mayer as owner of Farm); <u>Exhibit 7</u>, <u>Docket No. 14</u> (letter dated October 16, 2007, from Mayer to Countrywide's foreclosure counsel, stating "I do in fact own 60 acres of agricultural land at the homestead in Pope county."); <u>Exhibit A-6</u>, <u>Docket No. 29</u> (letter dated April 22, 2008, from Mayer to University of Minnesota Extension Service Farmer Lender Mediation Program, stating "I own and operate 62 agricultural acres in Pope County, Minnesota."); see also, <u>Plaintiff's Third Memorandum in Support</u>, <u>Docket No. 33</u>, at 8 (asserting that Mayer "is an owner of a 'family farm' under Minn. Stat. §500.24," because "[h]er farm is more than 60 acres[.]").

However, at the Hearing, Mayer argued that she does not, in fact, own the Homestead.  Instead, Mayer asserted that the Homestead, and the other parcels, are held by a revocable trust, of which she is the grantor.  See also, <u>M. Mayer Aff.</u>, supra at ¶3 ("I am a trustee of the The [sic] B.E.D. trust since 1993 which holds the 62 acre farm * * * ."); <u>Exhibit Z</u>, supra at unnumbered pages 15-17 (2003 property tax records, listing "The B.E.D." as owner of the parcels); see also, <u>Borg Aff.</u>, supra, Exhibit 2 (2008 property tax record, listing "The B.E.D." as owner of the 6.21 acre Homestead), Exhibit 6 (2008 property tax record, listing "The B.E.D." as owner of a 24.15 acre parcel).  Accordingly, at the Hearing, Mayer argued that she should not have been able to obtain a mortgage on the Homestead, and she alleged that the mortgage lender engaged in fraud to avoid the strictures of the Trust.  Countrywide correctly observed that Mayer's Complaint does not plead fraud with specificity, as required by Rule 9, Federal Rules of Civil Procedure.  See, <u>Complaint</u>, supra at ¶1 ("The Plaintiff brings this action * * * [for] equitable relief for the Defendant's fraudulent acts or practices with the lending and foreclosure practices in connection with said alleged mortgage."), and at p. 4 (requesting "the disgorgement of fraudulently gotten mortgage[.]").

Here, we simply acknowledge that disparity in the evidence, and note that we need not resolve the question of ownership in order to conclude that Mayer's

(continued...)

Allen Rosten ("Rosten"), who is her neighbor, and who avers that he was born at the Homestead, and that his family has farmed the entire 62-acre Farm for at least fifty (50) years, even after selling the land to Mayer.  See, <u>Rosten Aff.</u>, supra at ¶3.  Rosten further attests that "[t]he entire acreage * * * was always the same farm and homestead * * * ."  <u>Id.</u>  Lastly, the property tax records, which were submitted by Mayer, reveal that all three parcels are classified as "farms" by the Pope County Auditor.  See, <u>Exhibit Z</u>, supra at unnumbered pages 12-17, 19-20.

As noted, the FLMA does not apply to a debtor "who owns and leases less than 60 acres if the debtor has less than $20,000 in gross sales of agricultural products the preceding year."  Unfortunately, the FLMA makes no mention of such a circumstance when a mortgage is given on a parcel which is less than 60 acres, but where the debtor claims to own several agricultural parcels which total at least 60 acres, and our independent research has not uncovered any case which directly addresses the question.  Nonetheless, we find that the purpose of the FLMA, as well as the case law relating to the statute, support the conclusion that the statute was not intended to

---

(...continued)
mortgage, on the Homestead, does not qualify for protection under the FLMA.

protect property, such as Mayer's Homestead, given that she mortgaged a parcel well under 60 acres, which is used primarily as a residence, rather than for farming.

We are mindful that the Minnesota Court of Appeals has recognized that farms may be comprised of multiple parcels, and yet be within the scope of the FLMA.  See, Federal Land Bank of Saint Paul v. Wessels, supra at *1 (observing that the debtors' "promissory note was secured by a mortgage on 103.9 acres, 93 tillable, comprising two tracts which have been part of their family farm since 1943 and 1945"). However, we have not uncovered any case in which a Court has concluded that the FLMA was applicable where a mortgage was granted on fewer than sixty (60) acres. Cf., Ward v. Ward, 1993 WL 480243 at *1 (Minn. App., November 23, 1993) (concluding that the FLMA did not apply where mortgaged homestead "covers only 1.36 acres, is exclusively residential, and earns no income," notwithstanding the fact that the parties also owned an unencumbered 62.86 acre tract); Northern State Bank v. Efteland, supra at 543 ("[E]ven if [debtors] did meet the $20,000 in gross sales part of the test, * * * [debtors'] farm is only 26 acres, thus excluding them from protection under the [FLMA]."). Here, the mortgaged Homestead comprises only 6.21 acres, and therefore, plainly does not qualify for protection under the FLMA.

Moreover, none of the evidence, which has been submitted by Mayer, supports a finding that her Homestead is "principally used for farming." Minnesota Statutes Section 583.22, Subdivision 2 (definition of agricultural property under the FLMA); see also, Rengstorf v. Richards, supra at 139 (affirming conclusion that 133-acre parcel did not qualify for protection under the FLMA, where "[o]nly 25 acres were baled, and the value of that harvest was minimal," and where "the property's value as a residence exceeds the value of its agricultural production."). As noted, the purpose of the FLMA was to prevent "the loss of [debtors'] farmland, equipment, crops, and livestock through mortgage and lien foreclosures," Minnesota Statutes Section 583.21, by ensuring that farmers first had the opportunity to engage in mediation with their creditors. Despite the records submitted by Mayer, she has not shown that her Homestead is the sort of property which the FLMA was designed to protect. This is true even if she ultimately proves to be the owner of other property -- namely, the other parcels identified in the record -- which would qualify for protection under the FLMA, but which have not been encumbered by mortgages.

Accordingly, we conclude that Mayer's FLMA claim is not "sufficiently strong to warrant the grant of a temporary restraining order," Bremer Bank v. John Hancock

Life Ins. Co., 2006 WL 1205604 at *2 (D. Minn., May 2, 2006). Therefore, the first Dataphase factor weighs against the granting of a Preliminary Injunction.

        b.    Irreparable Harm. Turning next to consider whether Mayer has proved that she will suffer irreparable harm, we conclude that Mayer will not face irreparable harm, if her Motion is ultimately denied, because at the Hearing, counsel for Countrywide represented that his client would not commence eviction proceedings until the resolution of this action. We acknowledge that Countrywide's counsel had earlier submitted an Affidavit, which promised only to refrain from eviction proceedings during the pendency of Mayer's present Motion. See, Borg Aff., supra at ¶2. However, based on the representations of counsel at the Hearing, we understand that Countrywide intends to seek the expeditious resolution of this action, by dispositive Motion or otherwise, and we find that Countrywide's agreement to refrain from any eviction, until then, will prevent the harm, which might otherwise accrue to Mayer, if she faced eviction from her long-time residence. See, Gray v. Four Oak Court Ass'n, Inc., 2007 WL 4284856 at *1 (D. Minn., November 30, 2007)(granting Preliminary Injunction to stay the redemption period of a foreclosure after concluding, in part, "that the threat of irreparable harm to plaintiffs greatly outweighs any potential harm to defendants").

- 29 -

Moreover, even if Countrywide had not agreed to refrain from evicting Mayer until this action is resolved, we acknowledge Countrywide's argument, that Mayer could have filed a mediation request long ago, even if Countrywide was otherwise required to send her a mediation notice. See, Minnesota Statutes Section 583.26, Subdivision 2(c) ("If a debtor has not received a mediation notice and is subject to a proceeding of a creditor enforcing a debt against agricultural property * * * , the debtor may file a mediation request with the director."). Countrywide contends that Mayer failed to take any action throughout the pendency of both the foreclosure proceedings, and the subsequent six (6) month redemption period. See, Defendant's First Memorandum in Opposition, supra at 7. In response, Mayer argues only that she sent several pieces of correspondence to Countrywide's counsel, in October and November of 2007, and February and March of 2008 -- all after the foreclosure proceedings were well under way -- in order to express her belief that the FLMA protected her mortgage. See, Plaintiff's First Memorandum in Support, supra at ¶3; Exhibits 6-14, Docket No. 14.

"An emergency created by a party's inaction is generally afforded less consideration than a scenario in which the emergency is beyond the party's control." Bremer Bank v. John Hancock Life Ins. Co., supra at *2, citing Lydo Enter., Inc. v.

<u>City of Las Vegas</u>, 745 F.2d 1211, 1213 (9th Cir. 1984)("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."), <u>Citibank, N.A. v. Citytrust</u>, 756 F.2d 273, 276 (2nd Cir. 1985), and <u>Forry, Inc. v. Neundorfer, Inc.</u>, 837 F.2d 259, 267 (6th Cir. 1988).   Accordingly, even in the absence of Countrywide's agreement to refrain from eviction proceedings during the pendency of this action, the second <u>Dataphase</u> factor weighs against the grant of a Preliminary Injunction, given Mayer's failure to take timely action.

c.     <u>Other Factors</u>.   Lastly, the parties dispute whether the balance of harms weighs in favor of Mayer, or Countrywide.  See, <u>Defendant's First Memorandum in Opposition</u>, supra at 7; <u>Plaintiff's Second Memorandum in Support</u>, supra at 2.   We need not resolve the question, given that the first and second <u>Dataphase</u> factors weigh strongly against the grant of a Preliminary Injunction.

The same is true of the fourth <u>Dataphase</u> factor, which concerns the public interest.  Countrywide argues that Mayer has not alleged any improper conduct on its part, other than the alleged technical failure to send a mediation notice.  <u>Id.</u> at 7.  Accordingly, Countrywide argues that the public interest in enforcing contracts, and the payment of debts, weighs against Mayer's requested injunctive relief.  <u>Id.</u> at 8, citing <u>Granger v. Craven</u>, 199 N.W. 10, 11 (Minn. 1924)("[T]he usual and most

- 31 -

important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape their obligation on the pretext of public policy[.]"); see also, <u>Sealock v. Petersen</u>, 2008 WL 314146 at *5 (Minn. App., February 5, 2008)(citing same).  However, a countervailing argument supports Mayer's position, given that a Court in this District has also recognized that there is "a significant public interest in maintaining home ownership."  <u>Gray v. Four Oak Court Ass'n, Inc.</u>, supra at *1.  Again, we do not find this factor to be dispositive, given Mayer's failure to demonstrate a likelihood of success on the merits, and her failure to demonstrate a risk of irreparable harm.

Accordingly, on the Record presented, we find that Mayer has failed to make a sufficient showing, which would warrant the grant of a Preliminary Injunction, in view of the extraordinary nature of that equitable remedy.  As a consequence, we recommend that Mayer's Motion for a Preliminary Injunction be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Plaintiff's Motion for a Preliminary Injunction [Docket No. 3] be denied.

2.      That the Plaintiff's Motion for Default Judgment [Docket No. 21] be denied.

3.      That the Plaintiff's Amended Motion for Default Judgment [Docket No. 27] be denied.


Dated:  June 4, 2008                        _s/Raymond L. Erickson_
                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 20, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 20, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.